IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

vs.

Case No. 01-CV-2266 ADM/AJB

DAT COMPUTER KNOWLEDGE, INC., a Minnesota corporation; and DAN BLOWERS, an individual,

Defendants.

**ORDER OF SUMMARY JUDGMENT OF LIABILITY AND DAMAGES AGAINST DEFENDANT DAN BLOWERS**

This matter came to be heard on January 16, 2003, on the Motion of Plaintiff Microsoft Corporation ("Microsoft") for an adjudication of the liability and damages of Defendant Dan Blowers ("Blowers") upon its Complaint, and on the request that the Court permanently enjoin Blowers from engaging in similar conduct in the future. The Court having considered the Complaint, the declarations, exhibits, and memoranda submitted in support of and in opposition to Microsoft's motion, the oral argument presented by the parties, and the record on file in this action,

**It is HEREBY ADJUDGED that Microsoft has established the following facts:**

1. On June 5, 2002, the Court entered a judgment in the amount of $1,045,454 against DAT Computer Knowledge, Inc.

2. Microsoft develops, promotes, distributes and licenses computer software programs.

FILED JAN 17 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

3. Defendant Blowers is the President and co-owner of Defendant DAT Computer Knowledge, Inc. ("DAT"), a Minnesota corporation that manufactures and sells computers and distributes software to the public (collectively "Defendants"). Defendant Blowers personally manages the day-to-day operations of DAT and has the right and ability to supervise the activities of DAT employees. Blowers draws a salary from DAT as his sole source of income. The amount of salary he draws each year is dependent upon the success of the business.

4. Microsoft is the owner of valid, federally-registered trademarks and/or service marks in and to the following:

4a. Trademark Registration No. 1,256,083 ("MICROSOFT") for computer hardware and software manuals, newsletters and computer documentation;

4b. Trademark and Service Mark Registration No. 1,200,236 ("MICROSOFT") for computer programs and computer programming services;

4c. Trademark Registration No. 1,816,354 (WINDOWS FLAG LOGO) for computers, computer peripherals, and computer programs and manuals sold as a unit;

4d. Trademark Registration No. 1,872,264 ("WINDOWS") for computer programs and manuals sold as a unit;

4e. Trademark Registration No. 1,815,350 (COLORED WINDOWS LOGO) for computers, computer peripherals, and computer programs and manuals sold as a unit;

4f. Trademark Registration No. 1,475,795 ("POWERPOINT") for pre-recorded computer programs recorded on magnetic disks;

4g. Trademark Registration No. 2,188,125 ("OUTLOOK") for computer programs, namely programs providing enhanced electronic mail and scheduling capabilities and instructional manuals sold as a unit;

4h. Trademark Registration No. 1,741,086 ("MICROSOFT ACCESS") for computer programs for use with data bases and manuals sold as a unit; and

4i. Trademark Registration No. 1,592,783 ("BOOKSHELF") for computers, computer programs and manuals sold therewith.

Microsoft has been, and still is, the sole owner of all right, title and interest in, and to, the trademarks, service marks, and registrations noted above.

5. Microsoft's copyrights in and to its "Microsoft Windows 95," "Microsoft Windows 98," "Microsoft Office 97 (Professional Edition)," "Microsoft Access 97," "Microsoft Excel 97," "Microsoft Outlook 97," "Microsoft PowerPoint 97," and "Microsoft Word 97" software were registered with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.) and Copyright Office regulations. These copyrights are assigned the following Registration Numbers:

5a. TXu 649-511 ("Microsoft Windows 95") issued on August 18, 1995;

5b. TX 4-687-920 ("Microsoft Windows 98") issued on July 1, 1998;

5c. TX 4-395-984 ("Microsoft Office 97 (Professional Edition)") issued on March 7, 1997;

5d. TX 4-395-639 ("Microsoft Access 97") issued on February 14, 1997;

5e. TX 4-395-640 ("Microsoft Excel 97") issued on February 14, 1997;

5f. TX 4-395-686 ("Microsoft Outlook 97") issued on February 14, 1997;

5g. TX 4-395-685 ("Microsoft PowerPoint 97") issued on February 14, 1997; and

5h. TX 4-395-687 ("Microsoft Word 97") issued on February 14, 1997.

Microsoft has been, and still is, the sole owner of all right, title and interest in, and to, the copyrights and Certificates of Registration noted above.

6. Microsoft's software is distributed in all fifty states and throughout the world.

7. An investigator spoke with Blowers on two separate occasions about acquiring a computer system and purported Microsoft software from DAT. On July 16, 1999, Defendants distributed the computer system and purported Microsoft Office 97 (Professional Edition) ("Office Pro 97") software to the investigator. Microsoft analyzed the software and determined it to be counterfeit.

8. By letter dated July 23, 1999, Microsoft notified Defendants that they had distributed counterfeit Microsoft software, and demanded they cease and desist their illicit activities. The letter advised Defendants that they could avoid dealing in counterfeit Microsoft software in the future by obtaining Microsoft software only from authorized distributors, and directed Defendants to Microsoft at 1-800-325-1233 and information available on Microsoft's Internet home page at http://www.microsoft.com/oem. Defendants received the letter.

9. Less than two months later, on August 26, 1999, Defendants distributed counterfeit Microsoft Windows 95 and Office Pro 97 software to an investigator. Defendant Blowers personally provided the counterfeit Microsoft software to the investigator.

10. By letter dated November 10, 2000, Microsoft once again informed Defendants that they had distributed counterfeit software and asked Defendants to stop their illegal activities.

Despite Defendants' receipt of Microsoft's second letter notifying Defendants of their infringing conduct, Defendants continued to deal in counterfeit Microsoft software.

11. On October 15, 2001, Defendants distributed counterfeit Microsoft Windows 98 software to an investigator.

12. Microsoft has direct relationships with several large distributors to distribute Microsoft software to system builders and software resellers. Microsoft maintains a list of these authorized distributors (formerly known as "Delivery Service Partners" or "DSP") on its Internet home page. Through its Internet home page, its telephone Anti-piracy Hotline and a variety of mass mailings, Microsoft directs system builders and resellers to these authorized distributors as assured sources of genuine Microsoft software.

13. Blowers has been in the computer business since 1985, and regularly reads industry magazines and attends trade shows.

14. Despite the receipt of the cease and desist letters that informed Defendants that authorized distributors served as assured sources of genuine Microsoft software, Blowers did not confirm whether his suppliers were authorized distributors. [Answer ¶¶ 16, 18; Blowers Depo. at 115:11-23 & Exh. 10.]

15. Rather than deal with assured sources of genuine Microsoft software, Defendants acquired purported Microsoft software exclusively from unauthorized sources because they offered cheaper prices.

16. Blowers and his company dealt with suppliers who used coded items descriptions on their invoices. Defendants' vendor International Computer & Software used the codes "CD 97" to describe Microsoft Office Pro 97 software and used the codes "Full 95 2.1" and "CD 95"

to describe Microsoft Windows 95 software and "CD 98" to describe Microsoft Windows 98 software.

17. Blowers and his company continued to obtain Microsoft software from the same suspect sources even after they received the cease and desist letters in July 1999 and November 2000 confirming that they were distributing counterfeit Microsoft software. Defendants continued to acquire purported Microsoft software from Southwest Memory International, Inc. after receiving the cease and desist letters even though Blowers believed Southwest Memory had supplied the counterfeit software addressed in those letters.

18. Blowers still continued to obtain purported Microsoft software from sources other than authorized distributors even after Microsoft initiated this lawsuit.

19. Blowers did not change the business practices that caused he and his company to distribute counterfeit software.

20. Blowers personally manages the day-to-day operations of DAT Computer Knowledge, Inc. and authorizes, directs, and personally participates in all aspects of DAT's business. Blowers personally spoke with two investigators regarding their acquisitions of purported Microsoft software and personally distributed counterfeit Microsoft software to an investigator on August 26, 1999.

21. As the president and co-owner of DAT, Blowers has the right and ability to supervise and a direct financial interest in DAT's activities.

**As a result, THE COURT ENTERS THE FOLLOWING CONCLUSIONS OF LAW:**

1. By his unauthorized distribution of Microsoft's trademarks and/or service mark in commerce and in connection with Microsoft Windows 95, Microsoft Windows 98, Office 97

(Professional Edition), Microsoft Access 97, Microsoft Excel 97, Microsoft Outlook 97, Microsoft PowerPoint 97, and Microsoft Word 97 software, Defendant Dan Blowers has infringed the following registered trademarks and/or service mark owned by Microsoft:

(a) 1,256,083 ("MICROSOFT");

(b) 1,200,236 ("MICROSOFT");

(c) 1,816,354 (WINDOWS FLAG LOGO);

(d) 1,872,264 ("WINDOWS");

(e) 1,815,350 (COLORED WINDOWS LOGO);

(f) 1,475,795 ("POWERPOINT");

(g) 2,188,125 ("OUTLOOK");

(h) 1,741,086 ("MICROSOFT ACCESS"); and

(i) 1,592,783 ("BOOKSHELF").

2. Defendant Blowers' actions have also infringed Microsoft's registered copyrights in the following works:

(a) "Microsoft Windows 95" (Copyright Registration No. TXu 649-511);

(b) "Microsoft Windows 98" (Copyright Registration No. TX 4-687-920);

(c) "Microsoft Office 97 (Professional Edition)" (Copyright Registration No. TX 4-395-984);

(d) "Microsoft Access 97" (Copyright Registration No. TX 4-395-639);

(e) "Microsoft Excel 97" (Copyright Registration No. TX 4-395-640);

(f) "Microsoft Outlook 97" (Copyright Registration No. TX 4-395-686);

(g) "Microsoft PowerPoint 97" (Copyright Registration No. TX 4-395-685); and

(h) "Microsoft Word 97" (Copyright Registration No. TX 4-395-687).

3. Defendant Blowers' use of Microsoft's trademarks has resulted in the placement in commerce of units of software which are strikingly similar to genuine Microsoft, or Microsoft-licensed software, and which are or were likely to cause confusion, mistake or deception in the market as to the source of those units of software.

4. Defendant Blowers' distribution of counterfeit Microsoft software constitutes violations of federal and Minnesota statutes prohibiting unfair competition and deceptive trade practices. 15 U.S.C.A. § 1125(a); Minn. Stat. § 325D.43.

5. Defendant Blowers personally participated in DAT Computer Knowledge, Inc.'s infringing conduct. He had both the right and the ability to supervise the infringing activity and received a financial benefit from such activity. He is personally liable under the federal copyright and trademark laws for infringement of Microsoft's intellectual property rights. 17 U.S.C.A. § 101 et seq.; 15 U.S.C.A. § 1051 et seq.

6. The likelihood of confusion that existed in this instance by virtue of Defendant Blowers and his company's distribution of counterfeit and infringing software in interstate commerce is an appropriate predicate upon which to base permanent injunctive relief against the unauthorized reproduction, replication and/or distribution by Blowers of any unauthorized, illegal, and/or counterfeit Microsoft software.

7. Defendant Blowers has infringed Microsoft's copyrights and trademarks.

8. Microsoft is entitled to $240,000 in statutory damages against Blowers under the Copyright Act.

9. Microsoft is entitled to $800,000 in statutory damages against Blowers under the Lanham Act.

10. Under Copyright law, full costs and reasonable attorneys' fees may be awarded to the prevailing party. 17 U.S.C.A. § 505. Microsoft is entitled to an award of attorneys' fees and costs, in an amount of $15, 385.18.

Dated: January 17, 2003

The Honorable Ann D. Montgomery
UNITED STATES DISTRICT JUDGE

M2:20500362.03